THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT D. HARRIS, Defendant-Appellant.

Third District   No. 75-178

Opinion filed July 15, 1976.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Ronald E. Boyer, State's Attorney, of Watseka, for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Robert D. Harris appeals from a judgment of the Circuit Court of Iroquois County finding him guilty of burglary, pursuant to which he was sentenced to a term of not less than 6 nor more than 18 years in the penitentiary. Defendant Harris was first indicted for felony-murder, murder, robbery and burglary. Pursuant to negotiations defendant pleaded guilty to burglary and the State struck the remaining charges. The State made no recommendation at the sentencing hearing. On appeal in this court, the sole issue raised by defendant is that the minimum sentence should be reduced for the reason that such minimum sentence may defeat prospects for rehabilitation indicated by the record and the remarks of the trial court.

The record discloses that at approximately 11:30 p.m. on December 4, 1974, an elderly male farmer named Isaac Arseneau was found lying on his stomach with his hands tied to his feet and behind his back with

neckties in his rural Iroquois County farmhouse. The farmer had been beaten to death with a broken chair. Arseneau's wallet had been taken from him and was found empty at the scene and the television sets had been removed from the house.

At approximately the same time that the body of Arseneau was discovered, defendant Robert Harris together with the codefendant Alfonso Hill were arrested in the city of Momence, Kankakee County, Illinois, for investigation of an armed robbery of a tavern. They were detained for only an hour and a half and then released. Two days later, a Momence police officer discovered two watches in the toilet bowl in the detention cell at the Momence Police Department where defendant had been placed. The watches were identified as having been owned by Arseneau and had been removed from his home on the night of the murder. No one else had been placed in the detention cell who could have put the watches in the toilet bowl other than defendant Harris and his codefendant Hill. On December 8, 1974, an information was filed which charged defendant Harris and Alfonso Louis Hill with murder and a warrant was issued for the arrest of the defendants.

Over a week later on December 16, 1974, at approximately 2:30 p.m., defendant Robert Harris surrendered himself to the Momence Police Department and gave a complete confession to a policeman. Defendant Harris told the policeman that he knew there was a warrant for his arrest and he decided to turn himself in for the reason that, although he did burglarize the farmhouse, he did not personally kill Arseneau. He told the policeman that he and two companions were looking for a house to burglarize on December 4, 1974, and decided upon the Arseneau house in the rural Iroquois County area. As they entered, Arseneau came down the stairs and the codefendant Hill threw him down to the floor. Defendant Harris stated that he removed Arseneau's wallet and took the money from the wallet and that another codefendant Taylor, carried the television sets outside the house. Harris ransacked the upstairs room while his companions tied and beat Arseneau so severely that he was found dead as a result of such beating. They all left the premises at the same time.

Harris stated that he rented a U-Haul trailer the next day and took the television sets to Chicago where he sold them for an estimated figure of $150. The truck which defendant Harris used in driving to the murder scene was also stolen.

As we have indicated, the grand jury indicted defendant on four counts charging felony murder, murder, robbery and burglary. Defendant entered a plea of guilty to burglary for an unspecified sentence and agreed to testify against his codefendants. The State agreed not to prosecute the murder and robbery charges.

The court accepted the plea and, as we have noted, the State made no

specific recommendations as to sentence. The presentence report disclosed that defendant had a prior conviction for aggravated battery in 1969, for which he was sentenced to 5 years' probation. The aggravated battery charge, reduced from attempted murder, involved a shooting of an individual in Chicago. Defendant also admitted to the probation officer, in the written presentence report, that he was a burglar, particularly of rural homes for television sets and small appliances.

The probation officer's presentence report showed that Harris was 22 years of age, engaged to be married, and the father of two young children born out of wedlock to his fiancee. He originally grew up in Chicago where, at the age of 16, he was attacked and beaten by a street gang and eventually was charged with the aggravated battery charge to which we have referred. He retaliated by obtaining a gun and shooting one of his attackers. Although Harris had no other criminal record, he admitted to the probation officer that he had recently committed other burglaries of homes in order to get money to take care of his family.

Shortly after the Chicago incident, the Harris family moved to Iroquois County where Harris attended Donovan High School. He received good grades there and was captain of the high school basketball team and was active in all sports and was on the student council. Following his graduation he worked as furniture upholsterer in the town of Bradley, Illinois, but quit after a few months because of lack of transportation. Later he worked as a machine operator in Bradley but was laid off after about 10 weeks. He then took a position with the Willow Estates Youth Organization in his own community, but lost that job when government support for the program was terminated two months later. The project director testified on behalf of Harris at the sentencing hearing.

The crime with which we are concerned occurred several weeks after Harris lost his latest job. Harris said he was under tremendous pressure; that his children were going hungry every day; and that he couldn't bear up and knew that what he did was wrong. The question of sentencing involves many factors, notably where a serious crime has been committed. We also recognize that excessive minimum sentences may defeat the effectiveness of the parole system by making incarceration of a prisoner mandatory long after effective rehabilitation has been accomplished. *People v. Lillie* (5th Dist. 1967), 79 Ill. App. 2d 174, 179, 223 N.E.2d 716.

As noted by the Supreme Court of this State in *People v. Taylor* (1965), 33 Ill. 2d 417, 424, 211 N.E.2d 673, courts of review should be extremely reluctant to reduce sentences imposed by trial courts. Also, as noted in *People v. Garriott* (3d Dist. 1974), 20 Ill. App. 3d 994, 1001, 313 N.E.2d 189, one specific factor to be taken into consideration by a reviewing court, where a request is made for a reduction of a trial court sentence, is

to determine if a defendant had a previous criminal record. In the case before us, defendant had a record of one offense of aggravated battery and, also, readily admitted that he earned his living from participating in rural home burglaries from which he took television sets and small appliances. A second factor to be considered, we noted in the *Garriott* case, is lack of injury to the victim of the crime. This did not happen in the instant case, as we note, since the elderly farmer was beaten to death by defendant's confederates. Although defendant may not have personally struck the decedent, he did remove the wallet and empty its contents, making him guilty of robbery. We note that thereafter he continued to associate with at least one of the codefendants who participated in the murder of the decedent. All of these factors apparently entered into the consideration of the trial court in imposing sentence.

■■■ As noted in *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673, where it is contended that the punishment imposed in a particular case is excessive, though within the limits prescribed by the legislature, the court of review should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from fundamental law in its spirit and purpose, or that the penalty is manifestly in excess of constitutional prescriptions, requiring that penalties should be proportioned to the nature of the offense. While we have noted the apparent remorse of the defendant in this case and his cooperation with the prosecution in testifying against the codefendants, we do not believe we would be justified, under the precedents, in reducing the sentence imposed by the trial court in this case. It is not a matter of what disposition would have been made by this court, if we had been sitting as trial judges, but rather whether the action of the trial court requires our intervention to reduce the minimum sentence.

On the basis of the record we do not believe we would be justified in so doing, and, for the reasons stated, the judgment and sentence of the Circuit Court of Iroquois County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.